### In The Matter of COTT CORPORATION, Debtor.

### COTT CORPORATION, Plaintiff,

### v.

### NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, William J. McCarthy, H. Terence Lyons, Fred J. Roberto, Vincent Pisano, John E. Amaral, J. Leo Barry, Robert Williamson, and George J. Borgos, As Trustees of the New England Teamsters and Trucking Industry Pension Fund, Defendants.

Bankruptcy No. 2–80–00657.
Adv. No. 2–81–0813.

United States Bankruptcy Court,
D. Connecticut.

Dec. 21, 1982.

Richard F. Casher, and Michael J. Reilly, Hebb & Gitlin, P.C., Hartford, Conn., for plaintiff.

Norman Zolot, Hamden, Conn., for defendants.

## MEMORANDUM AND DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### ISSUE

The sole issue to be decided at this stage of the instant proceeding is whether the bankruptcy court has jurisdiction to determine the extent of so-called "withdrawal liability" of the debtor, Cott Corporation (Cott), to the defendant, New England Teamsters and Trucking Industry Pension Fund and its eight (8) individual trustees (collectively, the "Fund"), under the Employees Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (hereinafter, "MPPA"), Pub.L. No. 96–364, 94 Stat. 1208 (1980), (hereinafter, "ERISA").

### II.

Cott, a corporation then engaged throughout the United States in the production and distribution of beverages, filed a chapter 11 petition on June 24, 1980.[1] In contemplation of a sale of substantially all of its assets, Cott, on February 6, 1981, terminated its operations and dismissed its employees covered by collective bargaining agreements, including four such agreements (hereinafter, the "collective bargaining agreements"), with unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (the "Teamsters"). The collective bargaining agreements required Cott to contribute to a multiemployer pension plan[2] a fixed amount of money each week per employee. On February 26, 1981, the court approved the rejection of the collective bargaining agreements and Cott made no contributions to the Fund after February 28, 1981. The Fund is an unincorporated association established in accordance with a 1958 agreement between certain employers and various unions affiliated with the Teamsters, to receive pension contributions from the employers and to

1. The factual background is taken from the undisputed portions of the memoranda and pleadings. There has not been an evidentiary hearing.

2. ERISA § 1002(37)(A) defines a multiemployer plan as a plan to which more than one employer is required to contribute and is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer and satisfies any other requirements prescribed by the Secretary of the Treasury.

provide the pension benefits for covered employees of the employers. The Fund is a plan sponsor[3] of a multiemployer plan within the meaning of ERISA. Under ERISA § 1382, Cott's cessation of operations and rejection of the collective bargaining agreements constitute a withdrawal from the multiemployer plan. The Fund thereupon had the statutory obligation to determine Cott's withdrawal liability (the amount of the unfunded vested benefits allocable to Cott) and collect such amount after notification. ERISA §§ 1382, 1399. ERISA § 1391 contains a detailed method of computing withdrawal liability, subject to a limitation in ERISA § 1405, which sets a ceiling on the amount of unfunded vested benefits allocable to an insolvent employer undergoing liquidation or dissolution.

On June 18, 1981, the Fund filed a proof of claim with the bankruptcy court in the amount of $652,046.00. The Fund filed a supplemental proof of claim on August 19, 1982, increasing its claim to $2,281,767.00. On September 1, 1981, the Fund sent two letters to Cott demanding satisfaction of a claimed withdrawal liability of $2,281,767.00 by the payment of monthly installments to commence on November 1, 1981. Cott responded by a letter dated November 6, 1981, claiming that the letter of September 1, 1981 violated the automatic stay provisions of 11 U.S.C. § 362(a) and requesting certain documentation of how the withdrawal liability was determined. By letters dated November 2, 1981, the Fund notified Cott of its intention to "declare a default of payments" if Cott failed to pay the monthly installment due November 1, 1981 within 60 days, whereby Cott would be required to pay the total liability of $2,281,767.00 on January 2, 1982 in full.[4] On December 30, 1981, Cott commenced this adversary proceeding against the Fund seeking, *inter alia,* preliminary and permanent injunctive relief enjoining the Fund from attempting to "assess, assert, and recover or collect from Cott the alleged withdrawal liability

of $2,281,767.00; declaratory relief adjudging certain provisions of ERISA as amended by MPPAA are unconstitutional and void; and declaratory relief that the "validity, amount, priority or nonpriority status" of all claims of the Fund against Cott "shall be determined by the [bankruptcy] court in accordance with the procedures governing the filing of and objections to proofs of claim and allowance of claims as set forth in the Bankruptcy Code and Rules of Bankruptcy Procedure."

On December 31, 1981, the court entered a temporary restraining order which restrained the Fund from taking further action under ERISA, and on January 11, 1982, the parties consented to an extension of the temporary restraining order until further order of the court. The Fund thereupon filed a motion to dismiss the complaint, or alternately, for summary judgment based on numerous grounds. This memorandum will deal solely with the issue set forth in Section 1, *supra.*

### III.

### DISCUSSION

The Fund contends that the bankruptcy court lacks subject matter jurisdiction to review the validity or amount of the claims it filed because Congress in ERISA granted complete and exclusive jurisdiction of that function to an arbitration process contained in ERISA § 1401. Cott admittedly did not invoke the arbitration procedure. ERISA § 1401(a)(1) states that any dispute between an employer and the plan's sponsor of a multiemployer plan concerning withdrawal liability "shall be resolved through arbitration." There are various time limits set for a party to request arbitration, all of which commence with the date of notification to the employer under ERISA § 1399. The arbitration is conducted under procedures promulgated by the Pension Benefit Guarantee Corporation and ERISA

---

**3.** ERISA § 1301(a)(10) defines a plan sponsor as the multiemployer plan's joint board of trustees.

**4.** These letters purported to be presented in accordance with ERISA § 1399 which provides for the type of notice sent here.

§ 1401(a)(3)(B) provides that the determination by the plan sponsor is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the actuarial assumptions were unreasonable or the plan's actuary made a significant error in applying the assumptions. Actions to enforce, vacate or modify the arbitrator's award are to be brought "in an appropriate United States district court". ERISA § 1401(b)(2). The arbitrator's findings are presumed correct, rebuttable only by a clear preponderance of the evidence. ERISA § 1401(c). The Fund asserts that Cott, having failed to invoke arbitration, the Fund's calculation of withdrawal liability is final for all purposes. The Fund claims support for this position in ERISA § 1405(b), which allegedly determines the priority of a withdrawal liability claim, and in the failure of the Bankruptcy Code specifically to mention "the collection of withdrawal liability" as being subject to the automatic stay of 11 U.S.C. § 362(a).

ERISA § 1405(b) places limitations on the amount of withdrawal liability claims in the case of an insolvent employer undergoing liquidation or dissolution and states that:

(b) In the case of an insolvent employer undergoing liquidation or dissolution, the unfunded vested benefits allocable to the employer shall not exceed an amount equal to the sum of—

(1) 50 percent of the unfunded vested benefits allocable to the employer (determined without regard to this section), and

(2) that portion of 50 percent of the unfunded vested benefits allocable to the employer (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the employer determined—

(A) as of the commencement of liquidation or dissolution, and

(B) after reducing the liquidation or dissolution value of the employer by the amount determined under paragraph (1).

From this provision, the Fund finds Congressional intent "to grant former employees' unfunded vested benefits a higher priority than those found in bankruptcy claims, [and] such claims are beyond the jurisdiction of a bankruptcy court to determine." Fund Memorandum at p. 17. Two recent commentators state that ERISA § 1405(b) means that in liquidation proceedings under the Bankruptcy Code, the multiemployer plan will have the status of a creditor with respect to the first 50% of its withdrawal liability claim; after all other creditor claims have been satisfied in full, the remaining 50% of withdrawal liability claim will be satisfied ahead of equity security holders. Soble, *Bankruptcy Claims of Multiemployer Pension Plans,* 33 Lab.L.J. 57 (1982); Perkins, *Pension Claims in Bankruptcy,* 32 Lab.L.J. 343 (1981).

I find nothing in ERISA § 1405, or elsewhere, which purports to deny to a bankruptcy court its fundamental function of determining the validity of claims against the estate. *United States Fidelity & Guaranty Co. v. Bray,* 225 U.S. 205, 216, 32 S.Ct. 620, 624, 56 L.Ed. 1055 ("We think it is a necessary conclusion ... that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include ... the allowance, rejection and reconsideration of claims ...."); *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915) ("A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based."); *Gardner v. New Jersey,* 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504 (1946) ("The bankruptcy court whose aid is sought for enforcement of an asserted claim is not bound to treat the tendered proof as conclusive. When objections are made, it is duty bound to pass on them. That process is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective be liquidation or reorganization."). I similarly find that the Fund's contention that the failure of 11 U.S.C. § 362(a) to

refer to withdrawal liability from pension plans means that the bankruptcy court has no jurisdiction to review the correctness of the Fund's filed claims, insubstantial and not supported by precedent or legislative history. Although not mentioning withdrawal liability from pension plans, the legislative history to § 362 does indicate that the commencement of any arbitration proceedings against the debtor would be stayed:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws .... The commencement or continuation, including the issuance of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under [§ 362(a)(1)]. The scope of this paragraph is broad. All proceedings are stayed, *including arbitration,* license revocation, administrative, and judicial proceedings.

H.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 49–54 (1978) (emphasis added), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5836–5840, 6296–6297.

The only possible support for the proposition that the bankruptcy court must abstain from reviewing the Fund's proof of claim is found in the certain decisional law which holds that the dispute resolution mechanics of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* are unaffected by bankruptcy law. In *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the NLRB filed a proof of claim against the bankrupt for back pay arising out of an alleged unfair labor practice. Prior to filing its claim, the NLRB had issued an order for back pay, but had not yet determined ultimate liability through its administrative proceedings. The Supreme Court held that the bankruptcy court should abstain from supervising the liquidation of the NLRB claim and should defer to the NLRB noting that:

> The bankruptcy court normally supervises the liquidation of claims .... But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. And where the matter in controversy has been entrusted to an administrative agency, the bankruptcy court should stay its hand pending an administrative decision.... It is the board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.

*Id.* at 30, 73 S.Ct. at 83 (citations omitted).

Cott asserts, and I agree, that *Nathanson* is inapplicable. The Supreme Court's conclusion that the bankruptcy court should defer to the NLRB for the liquidation of the NLRB claim is premised upon the complexities involved in liquidating unfair labor practice claims, and the NLRB's peculiar expertise and experience in resolving unfair labor practice issues. Comparable expertise is not required to liquidate a withdrawal liability claim under ERISA and, in fact, no administrative agency has been entrusted with the function. The calculations required by ERISA in computing liability are statutorily set forth in ERISA § 1391. There is nothing in ERISA which indicates that the arbitrator called for by ERISA § 1401 be a person with any stated experience or expertise.

## IV.

For all the foregoing reasons, I conclude that the bankruptcy court has jurisdiction to determine the validity and amount of the Fund's proof of claim, and that the actions taken by the Fund, or alleged nonaction on the part of Cott, subsequent to the filing of the Fund's proof of claim do not affect this jurisdiction.