**In re AMALGAMATED FOODS, INC., a California corporation, Debtor.**

**In re AMALGAMATED ENTERPRISES, INC., a Delaware corporation, Debtor.**

**Bankruptcy Nos. LA 83–02224–JA, LA 83–02225–JA.**

United States Bankruptcy Court, C.D. California.

July 23, 1984.

Morris W. Hirsch, Pillsbury, Madison & Sutro, San Francisco, Cal., for Joint Board of Trustees of the Western Conference of Teamsters Pension Trust Fund.

John R. Tate, Gendel, Raskoff, Shapiro & Quittner, Mark Townsend, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, Cal., for debtors.

## MEMORANDUM OF DECISION AND ORDER

JOHN D. AYER, Bankruptcy Judge.

### INTRODUCTION

This case presents an apparent conflict between the Bankruptcy Code and the Employee Retirement Income Security Act of 1974 ("ERISA"). The underlying dispute involves alleged liability for withdrawal from a pension trust fund. The claimant asserts that any dispute should be carried out through ERISA's statutory arbitration procedure. The debtor asserts that it may bypass arbitration in favor of the ordinary procedure for dealing with bankruptcy claims. I find that the bankruptcy claims procedure achieves the goal sought by ERISA arbitration—indeed, that the claims

procedure may serve that goal better than ERISA arbitration itself. For that reason, I hold that the debtor may bypass arbitration in favor of the claims procedure.

## FACTS

Amalgamated Foods, Inc. ("Amalgamated"), a meat packing firm,[1] filed its petition under Chapter 11 of the Bankruptcy Code on February 4, 1983. The case involves over 1,700 creditors, two meat processing plants in different states, liabilities of up to $6,400,000, and assets with a potential value of $3,300,000. Amalgamated is no longer operating, although one of the plants was operated for some months by a third party under contract.

A few months prior to the filing, on August 20, 1982, Amalgamated bound itself to a pair of collective bargaining agreements ("the labor contract") with Wholesale & Retail Food Distribution Union Local No. 63, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 63").[2] By the terms of the labor contract, Amalgamated agreed to make specified contributions to the Western Conference of Teamsters Pension Trust Fund ("Pension Fund"). The Pension Fund is a multiemployer plan under ERISA. *See* 29 U.S.C. § 1001, *et seq.* Amalgamated did make the payments until March 14, 1983, shortly after the Chapter 11 filing, but it has made no payments since that time.

On August 29, 1983, the Pension Fund filed a claim in the amount of $371,329.72, asserting that the sum is Amalgamated's liability for withdrawal from the Pension Fund under 29 U.S.C. § 1381 (1982). The liability was computed by Section 10 of the Pension Fund's Employer Withdrawal Liability Rules and Procedures. The notice also advised Amalgamated that its exclusive avenue of review was by way of ERISA arbitration. If the ERISA rules were

held to apply, Amalgamated would have had to initiate arbitration prior to April 9, 1984. *See* 29 U.S.C. § 1401(a) (1982). Amalgamated did not initiate arbitration. Instead, on March 28, 1984, Amalgamated filed an objection to the pending claim with the Bankruptcy Court. *See* Bankr.R. 3007. The Pension Fund thereupon brought this motion for partial summary judgment. The Pension Fund argues that Amalgamated, by failing to initiate arbitration under ERISA, *see* 29 U.S.C. § 1401 (1982), has, in effect, confessed to judgment in favor of the Pension Fund as to the amount of its claim.

## LAW

The Pension Fund says it is insisting on its right to arbitration because of the supposed need for specialized expertise to dispose of the pension claim. Amalgamated says it wants to bypass arbitration because the bankruptcy claims process is likely to be quicker, and it needs a prompt resolution of the issue to facilitate winding up the case. I agree with Amalgamated that the bankruptcy claims process is designed to be expeditious. And indeed, the Pension Fund nowhere asserts that it will receive *slower* resolution in the Bankruptcy Court. In holding for Amalgamated, I find that ERISA itself is dedicated to the same goal. In other words, by dispensing with the arbitration process, I think I can serve the purposes of both statutes together.

The issue seems to me purely one of statutory interpretation. On the face of things, it seems clear that Congress intended to send the matter to arbitration. It seems equally clear that Congress intended bankruptcy claims to be resolved in the bankruptcy forum. Similarly, it seems clear that Congress could, if it wished, have declared that the arbitration procedure prevails over the claims process. In a matter of this sort, the choice of Congress

---

**1.** Originally there were two debtors—Amalgamated Foods, Inc. and its corporate parent Amalgamated Enterprises, Inc. But these cases have been consolidated for all purposes, and I treat them as one.

**2.** Strictly speaking, Amalgamated incurred its liability as a successor when it purchased assets of the original contracting employer. But the distinction is not material to this proceeding.

must be respected. *See generally The Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502 (D.C.Cir.1984); *Textile Workers Pension v. Standard Dye & Finishing,* 725 F.2d 843 (2d Cir.1984); *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983); *Republic Industries v. Central Pa. Teamsters,* 693 F.2d 290 (3d Cir.1982). The question is not what Congress might have done; the question is what Congress can be understood actually to have done, taking the statutes as they stand. And on this point, the legislative history of ERISA seems to me to be compelling. It provides:

> Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously and without regard to [other] issues.... [T]hese same principles apply to a plan's claim for employer withdrawal liability ...

126 Cong.Rec. H7899, Aug. 26, 1980 (Remarks of Rep. Thompson).

In the same vein, the capacity for quick disposition of claims is part and parcel of the bankruptcy process. The creditor initiates the process by filing a standard-form proof of claim. 11 U.S.C. § 501 (1982), Bankr.R. 3001–2, Official Form No. 19. In a Chapter 11, if the claim is properly scheduled, the creditor does not even have to file. Bankruptcy Code § 1111(a), 11 U.S.C. § 1111(a) (1982), Bankr.R. 3003. The claim is deemed allowed unless there is an objection. Bankruptcy Code Sec. 502(a), 11 U.S.C. § 502(a) (1982). If the debtor does object (as Amalgamated did here, *see* Bankr.R. 3007), the proof of claim may still constitute *prima facie* evidence of its validity and amount. *See* Bankr.R. 3001(f), *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct.

853, 90 L.Ed. 970 (1946). The resulting litigation is a contested matter under Bankruptcy Rule 9014.

All of this speaks of a procedure designed to facilitate the expeditious disposition of the assets of the estate. Even stronger evidence of this legislative policy may be found in Bankruptcy Code Section 502(c), 11 U.S.C. Sec. 502(c) (1982), providing that the Court may estimate any contingent or unliquidated claim which would unduly delay the closing of the estate. I do not mean to suggest that the estimating process is necessary or desirable here. I do think the section clearly voices a policy of speedy disposition.

This clear statement of legislative policy seems to me to control. It also seems to me sufficient to distinguish this case from cases counterpoising the bankruptcy process against the administration of the labor laws. The courts have consistently held that the banruptcy claims mechanism must defer to the National Labor Relations Board ("NLRB") for resolving labor disputes, even where the NLRB's mandate includes the power to grant an award of back pay. *See, e.g., Nathanson v. Labor Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *In re Adams Delivery Service, Inc.,* 24 B.R. 589 (9th Cir.B.A.P.1982); *cf. In re Tucson Yellow Cab Company, Inc.,* 27 B.R. 621 (9th Cir.B.A.P.1983). The labor cases differ from the present case in at least two respects. First, Congress endowed the NLRB with peculiar competence over labor matters because of its supposed expertise in this presumptively specialized field. By assigning back pay matters to the NLRB, it gave evidence that it saw a need for the exercise of the NLRB's specialized powers. Presumably if it felt the need for similar expertise with regard to arbitration, it would have done likewise. But it did not; and the Court may not second-guess Congress in the matter. Second, the remedy in labor is not solely compensatory; it is in part remedial or disciplinary. The Bankruptcy Code explicitly provides that police or regulatory actions against the debtor may continue unimpeded

by the bankruptcy filing. *See* 11 U.S.C. § 362(b)(4) (1984). This decision only codifies well-established practice. *See Order of Railway Conductors v. Pitney*, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946); *Smith v. Hoboken Railroad Co.*, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946).

I am likewise unpersuaded by the opinion of the Fifth Circuit deciding *In re Gary Aircraft Corp.*, 698 F.2d 775 (1983). The issue there was a supposed conflict between the bankruptcy claims process and the Armed Services Board of Contract Appeals ("ASBCA"). The Court found the ASBCA "better qualified by its experience and expertise" to deal with an issue of government contract law. However appropriate the holding may be with reference to the ASBCA, it has no obvious relevance to the very different institutional framework in this case.

The Pension Fund argues that the supposed need for expertise is manifest in the statutory structure. Supporting this assertion, the Pension Fund stresses that an arbitrator, if chosen, would come from the American Arbitration Association's National Panel of Multiemployer Pension Plan Arbitrators. *See* § 5 of the Fund's Employer Withdrawal Liability Arbitration Rules. There are at least two responses to this assertion. First, it is perfectly possible to assume that specialized arbitrators are instrumental to the purpose of the statute without assuming that the purpose of the statute is to employ special decision-making skill. More simply, the use of specialized arbitrators is perfectly consistent with the goal of quick disposition, identified above. Second, insofar as there may be a need for specialization, the Pension Fund misunderstands the kind of specialization that may be needed. The particular skill required here is not necessarily skill in labor law; it is skill in finance. And issues of finance are part of the daily agenda of the bankruptcy court. I do not mean to assert that a bankruptcy judge has the skill of an actuary. I do think that a bankruptcy judge is institutionally qualified to hear and decide issues of just this sort. Indeed,

on issues of this sort, he may be rather better qualified than many others.

It is perhaps worthwhile to note that neither party sought to raise any issues of the relative fairness of one tribunal over the other. I think this is entirely proper. The District Court for this District has specifically rejected an imputation of bias against the arbitration process. *See Shelter Framing Corp. v. Carpenters Pension Trust*, 543 F.Supp. 1234 (C.D.Cal.1982), aff'd on other grounds, 705 F.2d 1502 (9th Cir.1983), prob. juris. noted, —— U.S. ——, 104 S.Ct. 271, 78 L.Ed. 253 (1983); *see also Textile Workers Pension*, 725 F.2d 843, 855 (2d Cir.1984). Correspondingly, I can think of no reason why the bankruptcy claims process would be anything less than fair.

The Pension Fund has also sought protection in cases holding that the debtor may not effect a collateral attack on judgments rendered in another forum. *See, e.g., Kapp v. Naturelle, Inc.*, 611 F.2d 703 (8th Cir.1979); *In re Comer*, 723 F.2d 737 (9th Cir.1984). But these do nothing more than to apply a familiar principle of *res judicata* against a plaintiff as debtor in bankruptcy, just as it would apply to any other plaintiff.

This decision is in accord with the only other bankruptcy opinion that I know of on this topic. *See In re Cott Corp.*, 26 B.R. 332 (Bankr.D.Conn.1982). On a number of issues in the case, the Pension Fund sought to argue from unpublished opinions purportedly supporting its position. I have examined these opinions and they appear to me to be inapposite. Since they are unpublished, I see no point in specifically discussing them. I thereby avoid considering whether it is improper to cite them at all. *Cf.* 9th Circuit Appellate Rule 21(c).

The parties' briefs raise two other issues in which they seek, from opposite directions and for contrary purposes, to finesse the dispositive issue. First, the Pension Fund asserts that Amalgamated forever forfeited its right to demand arbitration by not making any demand before April 4, 1984, the supposed deadline for such a de-

mand. In fact, Amalgamated, by letter before April 4, did advise the Board that it reserved any rights it might have, including rights under 29 U.S.C. § 1401 (1982)—that is, including the right to demand arbitration. This seems to me to be a proper demand, if any were needed, though I suppose the Pension Fund might wish to argue that it was somehow insufficient. In any event, my holding today effectively relieves the debtor from any obligation to demand arbitration at any time.

Second, Amalgamated, for its part, tries to finesse the issue of arbitration by constructing an argument based on *National Labor Relations Board v. Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court's important new case permitting the Bankruptcy Court to authorize the rejection of collective bargaining agreements. In fact, the debtor did reject its collective bargaining agreement in this case, pursuant to court order. Under familiar principles of bankruptcy law, the rejection of such an executory contract constitutes a breach effective immediately before the date of the filing of the petition. *See* 11 U.S.C. § 365(g)(1) (1982); *Bildisco, supra; Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 613 F.2d 210 (9th Cir.1980). Amalgamated seems to assert that such a claim would at once precede and supersede an ERISA claim. I am not completely persuaded that Amalgamated is correct in characterizing the event of "breach." Rather, it may be that Amalgamated incurred the withdrawal liability when it ceased paying into the Pension Fund, which was not the same time as when it got court approval to reject the collective bargaining agreements. But, more important, I am not at all persuaded that a pre-Chapter "breach" under Sec. 365(g)(1) would necessarily preempt an otherwise valid ERISA claims resolution mechanism. Since the distinction is thus immaterial, I make no finding on exactly when the breach occurred.

Let me note also two other issues which may arise later, but are not before me at this time. First, there may be an issue whether the Pension Fund is entitled to certain statutory presumptions provided under 29 U.S.C. § 1401(a)(3) (1982). *See generally Bakersfield Concrete Construction, Inc. v. Construction Laborers Pension Trust,* 4 Emp.Ben.Cas. 1425 (C.D.Cal. 1983); *Ells v. Construction Laborers Pension Trust,* 3 Emp.Ben.Cas. 1449 (C.D.Cal. 1982); *Victor Construction Co. v. Construction Laborers Pension Trust,* 3 Emp. Ben.Cas. 1763 (C.D.Cal.1982) (9th Cir. appeal pending). Second, there may be a question as to whether the claim is entitled to priority as an administrative expense. *See* 11 U.S.C. § 507(a)(1) (1982). Neither of these issues is directly at issue today, and I see no point in trying to anticipate them now.

CONCLUSION AND ORDER

Obeying the Congressional mandate that there be prompt resolution of ERISA withdrawal liability claims, I find and order that the debtor need not submit to arbitration in this matter. This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.