In re T.D.M.A., INC. (Jointly Administered with Cambria Corporation Bankruptcy No. 86–01781K and Molish, Inc. Bankruptcy No. 86–01782K), Debtor.

Bankruptcy No. 86–01780K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 13, 1986.

Stephen Raslavich, Philadelphia, Pa., for Plan—Amalgamated Meat Cutters and Butchers Workmen of North America— Joint Council of Philadelphia and Vicinity— Retail Meat Pension Plan.

Fred D. Furman, Paul E. Bomze, Philadelphia, Pa., for trustees of the Retail Meat Pension Plan.

Marvin Krasny, Myron Bloom, Leon S. Forman, Paul D. Guth, Thomas E. Biron, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

■ We are herein presented with a motion filed by a labor union and its trustees urging us to refer the determination of the Debtor-employer's "withdrawal liability" to the union under a collective-bargaining retirement plan to arbitration. This motion causes us to weigh potentially conflicting provisions in two (2) federal laws, i.e., the policy of the Bankruptcy Code in assuring that all claims against the debtor are resolved in a single forum, with the policy of requiring that disputes over "withdrawal liability" initially are to be considered in arbitration. We conclude that a bankruptcy court should defer to an extra-bankruptcy dispute-mechanism process only in those extraordinary situations where deference to a specialized forum, competent to resolve issues with which the bankruptcy courts are unfamiliar, are the alternative to a bankruptcy-court determination. Because we do not find a dispute concerning an employer's "withdrawal liability" constitutes such an extraordinary situation, we shall deny the instant motion.

The facts of this case, as can be ascertained from the undisputed portions of the parties' respective pleadings and Memoranda of Law, are as follows. On April 11, 1986, the Debtor, T.D.M.A., Inc., formerly known as Pickwell Fine Foods Supermarkets, Inc., a grocery store chain in the Philadelphia area ("T.D.M.A."); Molish, Inc., a wholly-owned subsidiary of T.D.M.A. ("Molish"); and Cambria, Corp., a wholly-owned subsidiary of Molish ("Cambria"), filed Chapter 11 Voluntary Petitions

which have been jointly administered by this Court.[1]

The moving parties are the Amalgamated Meat Cutters and Butchers Workmen of North America—Joint Council of Philadelphia and Vicinity—Retail Meat Pension Plan and the Plan Trustees ("Plan"). The Plan is a multiemployer pension plan as defined by § 3(37)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(37)(A), as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453.

The Plan is maintained pursuant to collective bargaining agreements between Local 56 of the United Food and Commercial Workers Union ("Local 56") and various employers. Under these agreements, the participating employers are required to make periodic payments to the Plan to fund pension benefits of covered employees. T.D.M.A. had been a party to these collective bargaining agreements with Local 56 and therefore was a contributing employer to the Plan on behalf of its covered employees, prior to its demise.

In March of 1982, by selling its assets and ceasing all operations, T.D.M.A. ceased to be a participating employer in the Plan. This constituted a complete withdrawal from the Plan under § 4203(a) of the MPPAA, 29 U.S.C. § 1383(a),[2] rendering T.D.M.A. liable for withdrawal liability under §§ 4201, 4211 of the MPPAA, 29 U.S.C.

§§ 1381, 1391.[3] The MPPAA requires that an employer withdrawing from a multi-employer pension plan pay a fixed sum to the pension plan. This "withdrawal liability" is the employer's proportionate share of the plan's "unfunded vested benefits," calculated as the difference between the present value of vested benefits and the current value of the plan's assets.[4]

ERISA and MPPAA were designed by Congress[5] to "... ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans ...". *Nachman Corporation v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 361–362, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980).

On September 12, 1985, the Plan notified T.D.M.A. of its determination and calculation of T.D.M.A.'s withdrawal liability, which it assessed in the amount of $3,266,-470.00. This amount was payable in twenty-three (23) quarterly installments of $168,779.50 each, plus a final quarterly installment of $93,166.50, for a total payment of $3,975,095.00, and included interest at six (6%) percent per annum. The Plan also notified T.D.M.A. of its right to contest the demand for withdrawal liability in arbitration.

T.D.M.A.'s first quarterly installment was due on November 1, 1985, which it

1. T.D.M.A., Molish and Cambria are considered a single employer under §§ 3(37)(B) and 4001(b)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(37)(B) and 1301(b)(1), because they are under common control. Accordingly, they are jointly and severally liable for the withdrawal liability of T.D.M.A., which is the parent corporation.

2. A complete withdrawal under Section 4203 of MPPAA, 29 U.S.C. § 1383, occurs if "(1) an employer permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

3. In *Pension Benefit Guaranty Corporation v. R.A. Gray and Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the United States Supreme Court determined that withdrawal liability obligations under ERISA and MPPAA are constitutional and that the provisions of MPPAA

do not violate the Due Process Clause of the Fifth Amendment.

4. *See* 29 U.S.C. §§ 1381, 1391.

5. The withdrawal liability obligation was created by Congress after it found that:
   (A) withdrawals of contributing employers from a multi-employer pension plan frequently results in substantially increased funding obligations for employers who continue to contribute to the plan, adversely affecting the plan, its participants and beneficiaries, and labor-management relations, and
   (B) in a declining industry, the incidence of employer withdrawals is higher and the adverse effects described in subparagraph (A) are exacerbated. § 3(a)(4) of the MPPAA, 29 U.S.C. § 1001(a)(4).

paid, plus interest, on December 31, 1985. T.D.M.A. also filed timely requests for review of its withdrawal liability with the Plan on November 15, 1985, and November 20, 1985, therein raising numerous disputes regarding the determination and computation of the withdrawal liability.

The second quarterly payment, due on February 1, 1986, was never paid. Before the Plan declared a default and accelerated the payment, T.D.M.A. filed the instant Chapter 11 Petition on April 11, 1986.

On May 23, 1986, the Plan filed a Proof of Claim in the amount of $3,975,095.00, plus interest, less a credit for the single installment payment made, in this Court. On July 7, 1986, the Debtor filed an Objection to this Proof of Claim in the form of a Complaint in a separate adversarial proceeding, Adversary No. 86–0629K. On October 29, 1986, we approved a Stipulation allowing the Plan until December 23, 1986, to answer the Debtor's Objections to its Proof of Claim, and scheduling trial on the Objections on January 6, 1987.

On May 29, 1986, the Plan also filed this Motion, specifically designated as a "Motion for Suspension of Proceedings Pursuant to 11 U.S.C. § 305(a), Abstention Pursuant to 11 [28] U.S.C. § 1334(c)(1) and Referral of Matter to Arbitration."

Section 4221 of the MPPAA, 29 U.S.C. § 1401, specifically provides that any disputes between the plan and an employer must be initially resolved through arbitration, as follows:

(a)(1) Any dispute between an employer and the Plan sponsor of the Multiemployer Plan concerning a determination made under Sections 4201–4219 *shall* be resolved through arbitration.... (emphasis added).

The Plan claims, in its Motion, that this statutory provision requires this Court to refrain from determining the Debtor's withdrawal liability, to submit this issue to arbitration, to suspend this case while the arbitration process is pending, and to resume administration of the case only after this issue is resolved in arbitration.

The statutes invoked by the Plan in support of its Motion read as follows:

11 U.S.C. § 305.   Abstention.

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; ...

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, ..., is not reviewable by appeal or otherwise.

28 U.S.C. § 1334(c)

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) ... Any decision to abstain made under this subsection is not reviewable by appeal or otherwise....

The Plan cites in support of its Motion, the local Court of Appeals decision in *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982). In that case, the Court, while reversing a district court decision requiring exhaustion where the plaintiff-employer launched a facial constitutional attack on the MPPAA, rejects the plaintiff's broader argument that exhaustion of the arbitration remedy established by 29 U.S.C. § 1401(a)(1) is not generally required in contents of MPPAA withdrawal liability. It appears that this case does establish, as the Plan contends, that resort to arbitration must ordinarily precede court action to challenge withdrawal liability.

However, we believe that the principle established by *Republic* is merely the beginning point for determining whether this bankruptcy court should require that the employer "exhaust" its arbitration remedy before allowing the Plan's claim against a bankrupt employer to be evaluated in this bankruptcy court. The ultimate decision-

making process requires a balancing test with the principle of bankruptcy law that all claims against a debtor should be resolved in the bankruptcy court, which will be in a position to rule upon all of the disputes concerning claims against the debtor and thus deal with all creditors in even-handed fashion.

Our starting point is close examination of the Bankruptcy Code sections relied upon by the movants, 11 U.S.C. § 305(a) and 28 U.S.C. § 1334(c). The former may be invoked only where "the interests of creditors *and the debtor* would better be served by such suspension or dismissed." (emphasis added). At the outset, the very fact that the debtor is strenuously objecting to this Motion may be said to negate a finding that its interests would be served thereby. It is also unlikely that the interests of any creditors other than the Plan would be served by the delay inherent in requiring a referral of this issue to arbitration. A hearing on the Plan's Claim is scheduled on January 6, 1987. Barring a continuance by agreement, the decision-making process will thus begin in this Court in about two (2) months. It is unlikely that the issue could be resolved in arbitration any more quickly. Hence, it is difficult to see where 11 U.S.C. § 305(a) could be effectively utilized as a basis for the relief sought.

Similarly, it is not clear that 28 U.S.C. § 1334(c)(1) has any application here, because that provision appears expressly related to issues of comity and respect for *state* law. Here, of course, the Plan urges that we abstain on the basis of the existence of a policy in *federal* law, i.e., § 4221(a) of the MPPAA. *See In re Eastern Consolidated Utilities*, 17 B.R. 809, 811 (Bankr.E.D.Pa.1982); *In re Zamost*, 7 B.R. 859, 862 (Bankr.S.D.Cal.1980).

However, we do concede that there appears to be some area where, under 11 U.S.C. § 305(a), we can determine that it is in the interests of creditors and the debtor to resort to processes outside of the bankruptcy court despite their protests; and that the statement that "[n]othing ... prevents a district court in the interests of

justice" from abstaining in 28 U.S.C. § 1334(c) probably applies to reference to federal as well as state forums. However, it does seem clear that the discretion to suspend or abstain should be narrowly exercised. Further, it appears that this Court is accorded a very broad discretion. Thus, per the portions of 11 U.S.C. § 305(c) and 28 U.S.C. § 1334(c)(2) quoted above, appeal rights from an abstention decision are limited.

The broad discretion accorded to a bankruptcy court in this decision-making process is emphasized in *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983). That case involved a debtor seeking to recover the balance of a contract price for goods wherein the defendant requested a stay pending arbitration as per the terms of the parties' contract requiring resort to arbitration. The Court held that "... while a bankruptcy court [has] the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court" (footnote omitted). *Id.* at 59–60. The court based this conclusion on its finding that "... because the underlying purposes of the Bankruptcy Reform Act impliedly modify the Arbitration Act, the granting of a stay pending arbitration, even when the arbitration clause is contractual, is a matter left to the sound discretion of the bankruptcy judge." *Id.* at 56.

As we indicated at the outset, we do acknowledge that, in certain extraordinary situations, where deference to a specialized forum with particular expertise is in issue, the courts have held that the bankruptcy courts should not exercise their discretion to determine a claim otherwise within the scope of the specialized forum's jurisdiction. One example of such an extraordinary situation is consideration of claims within the scope of the Armed Services Board of Contract Appeals. *See Matter of Gary Aircraft Corp.*, 698 F.2d 775, 782–84 (5th Cir.1983); *In re Misener Industries, Inc.*, 54 B.R. 89, 90–91 (Bankr.M.D.Fla. 1985); and *In re Vogue Instrument Corp.*, 31 B.R. 87, 90 (Bankr.E.D.N.Y.1983). An-

other example is claims within the jurisdiction of the National Labor Relations Board. *See Nathanson v. NLRB*, 344 U.S. 25, 29–30, 73 S.Ct. 80, 83–84, 97 L.Ed. 23 (1952); and *In re Tucson Yellow Cab Co.*, 27 B.R. 621, 623 (9th Cir.Bankr.App.1983). Others doubtless exist, as where a matter involving a conflict of the law of different countries may be involved and resort to international arbitration is deemed appropriate. *See Quinn v. CGR*, 48 B.R. 367, 369–70 (D.Colo.1985).

■ However, it does not appear to us that the same kind of extraordinary situations which are present in the foregoing cases are present here. We further note that all except one of the many courts which have considered, either expressly or impliedly, the issue of whether arbitration or the bankruptcy court is the proper forum to resolve a claim of a debtor's MPPAA withdrawal liability have held that the bankruptcy court is the proper forum.

Two (2) cases have expressly rejected the position of the Plan here, albeit in the context of challenges of the jurisdiction of the bankruptcy court as opposed to the more temperate and appropriate request that this Court exercise its discretion to suspend or abstain. *In re Amalgamated Foods, Inc.*, 41 B.R. 616 (Bankr.C.D.Cal. 1984); and *In the Matter of Cott Corporation*, 26 B.R. 332 (Bankr.D.Conn.1982).

The court in *Cott*, at 26 B.R. 335, could find nothing in ERISA, or elsewhere, which denied to a bankruptcy court its fundamental function of determining the validity of MPPAA claims against the estate.[6] The *Amalgamated* court, at 41 B.R. 617, concluded that Congress intended bankruptcy claims to be resolved in the bankruptcy forum and that Congress could, if it wished, have expressly declared that arbitration procedures prevail over the bankruptcy court's claims process. This, Congress did not do. In fact, the court points

out that Congress, in enacting the 11 U.S.C. § 362 automatic stay in bankruptcy, mandated that the initiation of bankruptcy stays, *inter alia*, arbitration proceedings. Thus, the court concluded, any MPPAA withdrawal liability arbitration process already begun prior to bankruptcy would be stayed.

Here, of course, no arbitration process has begun, which makes us less likely to stay our hand in the determination process. The Plan cites one case to the contrary, *In re Hawley Coal Mining Corp.*, 5 EBC 2680, Misc. Nos. 84–00169 and 84–00170 (D.W.Va. Opinion and Order dated Dec. 7, 1984). In that case, a federal district court had before it a motion to withdraw the reference of a union's MPPAA withdrawal liability claim from the bankruptcy court before it. Rather than withdrawing the reference, the Court remanded the matter to arbitration on the authority of, *inter alia, Republic Industries, supra*. With all due respect to the *Hawley* court, it appears that, sitting as a district court, it simply overlooked the important bankruptcy law principles recited in *Zimmerman*, and treated the matter as would a district court hearing a non-bankruptcy case challenging the imposition of MPPAA liability.

A concern that is pervasive throughout the Bankruptcy Code is that of a speedy resolution of the bankruptcy proceedings. The Court of Appeals in *Zimmerman*, 712 F.2d at 58, stated:

> While the reduction of unnecessary delays, expense and duplications of effort are important in all judicial proceedings, they are especially important in bankruptcy cases. The economic fragility of the bankrupt's estate, the excess of creditors' demands over debtor's assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding.

---

6. "We think it is a necessary conclusion ... that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include ... the allowance, rejection and reconsideration of claims ...". *Cott*, 26 B.R. at 335, *quoting United States Fidelity and Guaranty Co. v. Bray*, 225 U.S. 205, 216, 32 S.Ct. 620, 624–25, 56 L.Ed. 1055 (1912).

We agree with the statement of the *Amalgamated* court, 41 B.R. at 617, that the bankruptcy claims process is designed to be expeditious. Bankruptcy courts are empowered by 11 U.S.C. § 502(c) to "estimate any contingent or unliquidated claims which would unduly delay the closing of the estate." *Id.* at 618. This section exemplifies the Congressional intent of assuring a speedy disposition of all matters relevant to bankruptcy proceedings. Referring this instant withdrawal liability matter, prepared to come to trial here within two (2) months, to arbitration would only add an additional layer of time-consuming procedure and would require that the bankruptcy proceedings be suspended pending the outcome of the arbitration process.

The creditors argue that the withdrawal liability determination under ERISA and MPPAA is very complex and technical, and is best-suited for the special expertise of the arbitration system. While we agree that this determination can be complex and technical, we do not agree that it is beyond the capabilities of the bankruptcy court.

The truth of this assertion and the true weight of the authority against the Plan's position is established by the observation that there are many cases where bankruptcy courts *have* in fact resolved MPPAA withdrawal liability claims. For example, numerous courts, never stopping to consider whether deference to arbitration is necessary, have ruled that pre-petition MPPAA withdrawal liability claims are not entitled to administrative or priority status. *See, e.g., Trustees of Amalgamated Insurance v. McFarlin's,* 789 F.2d 98 (2d Cir. 1986); *Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund,* 748 F.2d 42 (1st Cir.1984); *Amalgamated Ins. Fund. v. Kessler,* 55 B.R. 735 (S.D.N.Y.1985); *In re Great Northeastern Lumber and Millwork Corp.,* 64 B.R. 426 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH. J.); *In re Pulaski Highway Express,* 57 B.R. 502 (Bankr.M.D. Tenn.1986); *In re United Department Stores,* 49 B.R. 462 (Bankr.S.D.N.Y.1985); and *In re Concrete Pipe Machinery Co.,* 28 B.R. 837 (Bankr.N.D.Iowa 1983). Similarly, numerous other bankruptcy cases have not hesitated to determine other sorts of claims under ERISA. *See, e.g., In re Columbia Motor Express, Inc.,* 33 B.R. 389, 393 (M.D.Tenn.1983); *In re Braniff Airways, Inc.,* 24 B.R. 466 (Bankr.N.D.Tex. 1982); *In re Threewitt,* 20 B.R. 434, 437 (Bankr.D.Kan.1982); and *Eisenberg v. Baviello,* 12 B.R. 412, 417 (Bankr.E.D.N.Y. 1981).

If we were to rule in favor of the Plan on its Motion here, we would be compelled to conclude that all of the foregoing courts simply overlooked the § 4221(a) issue. We believe that a more logical conclusion is that none of these courts felt that the issue was worthy to merit consideration, and that determination of a claim of MPPAA withdrawal liability can indeed be made by a bankruptcy court.

For all of the foregoing reasons, we believe that the proper exercise of our discretion as to whether to suspend the proceedings in this case in favor of arbitration of MPPAA withdrawal liability is to refuse to do so. This we believe would serve the interests of all of the creditors of the Debtor except possibly the Plan, as well as the Debtor. Therefore, the Plan's Motion shall be denied in an accompanying Order.

### ORDER

AND NOW, this 13th day of November, 1986, upon consideration of the Motions of the Amalgamated Meat Cutters and Butcher Workmen of North America Joint Council of Philadelphia and Vicinity Retail Meat Pension Plan and the Trustees of said Plan for the entry of an Order (1) Suspending Proceeding Pursuant to 11 U.S.C. § 305(a) or (2) For the Entry of an Order of Abstention Pursuant to 28 U.S.C. § 13234(c)(1), and consideration of the Memoranda and Supplemental Memoranda of the parties in favor of and in opposition to the said Motions, respectively, the said Motions are DENIED in accordance with the accompanying Opinion.