**TRUSTEES OF the CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, Plaintiff –Appellee,**

v.

**CENTRAL TRANSPORT, INC., GLS Leasco, Inc., and Centra, Inc., Defendants–Appellants.**

**Nos. 88–2604, 88–2836.**

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1989.

Decided Oct. 31, 1989.

As Corrected Nov. 6, 1989.

Rehearing and Rehearing En Banc Denied Jan. 10, 1990.

Joseph M. Burns, Martin J. Burns, Stephen B. Horwitz, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiff-appellee.

Leonard R. Kofkin, Fagel, Haber & Maragos, Chicago, Ill., Patrick A. Moran, Fredric A. Smith, Simpson & Moran, Birmingham, Mich., for defendants-appellants.

Before BAUER, Chief Judge, KANNE, Circuit Judge and HENLEY,[1] Senior Circuit Judge.

KANNE, Circuit Judge.

Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund ("the Fund"), filed suit in district court seeking judgment against defendants-appellants, Central Transport, Inc., GLS Leasco., Inc. and Centra, Inc. ("defendants"), for payment of withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"). The defendants moved to dismiss this action claiming the district court lacked jurisdiction because the defendants had not received the Fund's notice and demand for withdrawal payment. The district court found that the defendants were under common control with the withdrawing employer and notice of demand for payment to that withdrawing employer was sufficient. The motion to dismiss was denied. The district court then granted summary judgment in favor of the Fund holding that the defendants were precluded from contesting the liability because they failed to invoke arbitration within the time limits of ERISA, notwithstanding the fact that the Fund voluntarily filed a proof of claim in the bankruptcy proceedings of the

withdrawing employer and such claim was timely objected to in that forum. The district court granted the Fund's motion for summary judgment. We affirm the denial of dismissal and reverse the grant of summary judgment.

## I. BACKGROUND

On March 29, 1984, the Mason and Dixon Lines, Inc. filed for relief under Chapter 11 of the Bankruptcy Code and soon thereafter withdrew from the Fund. On October 19, 1984, a representative of the Fund sent a letter to Mason and Dixon demanding payment of $451,142.00 as estimated withdrawal liability under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, *et seq.* (1982). An Operating Trustee of Mason and Dixon was appointed on December 6, 1984. On December 31, 1984, the Trustee advised the Fund of the bankruptcy proceedings and the appointment of a trustee. On January 15, 1985, the bankruptcy court received a proof of claim from the Fund, pursuant to Bankruptcy Rule 3003(C)(2), for the estimated amount of withdrawal liability. The Fund sent a letter to Mason and Dixon on March 28, 1985, stating that the recalculated withdrawal liability was $627,486.00.

It is essentially undisputed that the defendants here are under common control with Mason and Dixon as defined in 29 U.S.C. § 1301(b)(1). Pursuant to 11 U.S.C. § 502(a), Mason and Dixon and two of the defendants timely filed objections to the proof of claim, and, after notice was given to the parties, a hearing on the objections was held on September 8th, 1986. The Fund did not respond to the objections or appear at the hearing. The Fund's claim was disallowed on September 8 by an order of the bankruptcy court because the claim was filed after the date fixed as the last day for filing proofs of claim.

On August 21, 1986, before the disallowance of its bankruptcy claim, the Fund filed

1. The Honorable J. Smith Henley, Senior Judge for the United States Court of Appeals for the

Eighth Circuit, sitting by designation.

this suit against defendants in district court. The complaint sought payment from defendants arguing that the entire withdrawal liability of Mason and Dixon was due and owing because defendants had forfeited their right to contest the liability by failing to invoke arbitration as required by MPPAA. 29 U.S.C. § 1401(a)(1). Defendants filed a motion to dismiss on February 2, 1987, asserting that the district court lacked subject matter jurisdiction because the Fund did not give the notice required by 29 U.S.C. § 1399(b)(1). The motion was denied on April 21, 1987. Subsequently, the Fund filed a motion for summary judgment arguing the failure to initiate arbitration by the defendants foreclosed them from contesting the liability. On June 18, 1988, the district court granted the motion for summary judgment against defendants for $627,486.00 plus interest, costs and attorneys' fees. Judgment for interest, liquidated damages, and attorneys' fees was entered on August 16, 1988, in the sum of $410,843.72.

On appeal, the defendants argue they are not precluded from contesting the withdrawal liability because the bankruptcy court was a proper forum for the disposition of the withdrawal liability claims and the Fund's voluntary filing of a proof of claim tolled the time for initiating arbitration. The Fund argues the bankruptcy court did not have jurisdiction over the Fund's claim against defendants since they were not debtors in the proceeding. Defendants also renew their argument for dismissal claiming that the district court lacked jurisdiction because the Fund failed to give adequate notice of the withdrawal

liability claim. The Fund counters that adequate notice was given to the defendants.

## II. DISCUSSION

### A. *Notice*

■ Under 29 U.S.C. § 1399(b)(1) the plan sponsor must give notice regarding the liability to the employer and demand payment from the employer.[2] Here, the Fund sent a letter to Mason and Dixon demanding estimated withdrawal liability. The defendants argue that notice to one member of a control group was not sufficient and that each member of the group should have been notified as well. This position is contrary to the decisions addressing this issue. In *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 (3rd Cir.1986), the court held that notice to one member of a control group was notice to all members. The court said such a reading is consistent with the language of 29 U.S.C. § 1301(b)(1) which requires that entities under common control be treated as a single employer.[3] *Id.* at 127. Moreover, this construction comports with the remedial goals of MPPAA.[4] *Id. Accord Teamsters Pension Trust Fund—Board of Trustees v. Allyn Transp. Co.*, 832 F.2d 502, 506 (9th Cir. 1987); *Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1024 (3rd Cir.1988); *Central States, Southeast and Southwest Areas Pension Fund v. Skyland Leasing Co.*, 691 F.Supp. 6, 13 (W.D.Mich.1987); *Connors v. Calvert Dev. Corp.*, 622 F.Supp. 877, 881–82 (D.D.C. 1985). We agree and hold that notice and demand to one member of a control group is notice and demand to all in the control

**2.** 29 U.S.C. § 1399(b) reads:
   (1) as soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
      (A) notify the employer of—
      (i) the amount of the liability, and
      (ii) the schedule for liability payments, and
      (B) demand payment in accordance with the schedule.

**3.** The court further explained that a fund should have to provide notice only to the company that is the employer of the fund's participants and should not have to bear the burden of determining all other possible entities that later may be

determined to be in a control group with the employer company. On the other hand, a company is aware of other entities that are under common control with it. *Barker & Williamson*, 788 F.2d at 128.

**4.** The Third Circuit said, "The MPPAA was designed '(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) ... to ensure benefit security to plan participants.'" (quoting H.R. Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2918, 2939). *Barker & Williamson*, 788 F.2d at 127.

group. Thus, the district court had jurisdiction and the denial of defendant's motion to dismiss was proper.

### B. *Equitable Tolling*

The more difficult question is whether the defendants properly relied on the bankruptcy process to defend the withdrawal claim. That is, when the Fund filed its claim in bankruptcy court was the time for initiating arbitration proceedings equitably tolled?

When summary judgment was granted in this case by the district court, we had, in effect, precluded any method of determining withdrawal liability apart from arbitration. If arbitration was not sought within the time period required by 29 U.S.C. § 1401(a)(1), the amount demanded by the pension plan sponsor was due and owing. We interpreted MPPAA to that effect in *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988). In *Admiral,* the employer had sought statutory interpretation of a MPPAA provision in the district court, foregoing arbitration. We determined that the employer's contentions in the district court were "a mere smoke screen" and that the withdrawal liability must be paid. We acknowledged that the result was harsh, but it was mandated by the statute. Indeed, the district judge here used *Robbins* as his sole cite for authority in granting summary judgment in favor of the Fund.

However, after *Robbins* was decided (and after the district judge granted summary judgment), we were confronted with a narrow situation which caused a limited attenuation of *Robbins.* It was determined that equity required the tolling of the running of the time period for seeking arbitration under section 1401(a)(1) if an employer properly pursued a viable claim contesting the application of withdrawal liability in a judicial forum. In *Banner Indus., Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 875 F.2d 1285 (7th Cir.1989), the employer which allegedly owed withdrawal liability filed suit in district court seeking a declaratory judgment that it was not liable because it was no longer an "employer" as defined by ERISA. We affirmed the district court's

decision that the issue whether Banner was an employer was a matter subject to arbitration. But then, we were required to determine whether Central States Pension Fund was entitled to summary judgment on the withdrawal claim because the statutory period for initiating arbitration had expired after Banner initiated its suit in district court. We upheld the district court's decision to toll the time for initiating arbitration proceedings under 29 U.S.C. § 1401(a)(1) and quoted the following language from its decision:

> This is not a case in which the party assessed did absolutely nothing, waited until the pension plan filed a collection action against it, and then for the first time tried to assert its defenses in court when it should have proceeded in arbitration. Banner took immediate and affirmative steps to contest its liability.

*Id.* In essence, we determined that actively pursuing a legitimate issue of statutory construction in federal court will toll the period during which arbitration must begin.

■ Having determined in *Banner* that the time period for seeking arbitration is equitably tolled by pursuing nonfrivolous litigation in district court, we are compelled to find that the defendants' objection to the Fund's claim of withdrawal liability in the bankruptcy court similarly tolled the time period under section 1401(a)(1). Although, in this case it was the Fund which took the affirmative step of voluntarily filing a claim in bankruptcy court before the period for initiating arbitration had expired, the defendants took steps to defend the claim within the time allowed by the bankruptcy rules. Tolling based on initiation of a suit by a fund and a timely response by an employer was an issue addressed in *Trustees of Chicago Truck Drivers v. Chicago, Kansas City Freight Line, Inc.,* 694 F.Supp. 469, 475 (N.D.Ill.1988). In *Chicago, Kansas City Freight Line,* which involved an issue of statutory construction, the fund filed suit before the period for initiating arbitration had run and the employer timely contested liability. The district court said "we find that [the employer] has not forfeited its right to initiate arbitration and that the *filing* of this action tolled the limitations." *Id.* (emphasis add-

ed). We think that the approach taken in *Chicago, Kansas City Freight Line* was consistent with *Banner*. This analysis would also apply to a claim filed by a fund in a bankruptcy court. If the bankruptcy court had jurisdiction to resolve the liability withdrawal issue, an employer could be bound by an adverse ruling in favor of the fund.

It was not a novel proposition that withdrawal liability claims were subject to adjudication in bankruptcy court. Several bankruptcy courts have addressed the issue. In *In re Amalgamated Foods, Inc.*, 41 B.R. 616, 617–18 (Bankr.C.D.Cal.1984), the court held that Congress could have declared, but did not, that the arbitration procedure prevails over the bankruptcy claims process. Therefore, the withdrawal liability claim was permitted to be defended in the bankruptcy claims process. Similarly, in *In re T.D.M.A., Inc.*, 66 B.R. 992, 996 (Bankr.E.D.Pa.1986), the bankruptcy court stated that nothing in ERISA or MPPAA prevented it from determining the validity of MPPAA claims against the estate. *See also, In re Cott Corp.*, 26 B.R. 332, 335 (Bankr.D.Conn.1982) ("I find nothing in ERISA § 1405, or elsewhere, which purports to deny a bankruptcy court its fundamental function of determining the validity of claims against the estate"). These cases advance the theory that arbitration is not the *sole* forum in which withdrawal liability claims can be adjudicated. While we certainly do not resolve the question of whether bankruptcy courts have jurisdiction to determine withdrawal liability under MPPAA,[5] those bankruptcy decisions provided a basis for the reasonable belief of defendants in this case that the issue of withdrawal liability could be addressed in the bankruptcy claim filed by the Fund.

■ Therefore, consistent with our equitable tolling decision in *Banner*, the filing in the bankruptcy court by the Fund, accompanied by a timely response by the defendants, tolled the time period for seeking arbitration under section 1401(a)(1). Moreover, the equitable tolling rationale continues to apply in this case because the Fund filed this lawsuit in district court against the defendants prior to the dismissal of its claim in the bankruptcy court. The tolling of the time period under section 1401(a)(1) for seeking arbitration is extended until the final disposition of this case.

### III. CONCLUSION

The notice of withdrawal liability to one member of a control group serves as notice to all members of the group and the defendants' motion to dismiss for lack of jurisdiction was properly denied. Further, when the Fund voluntarily filed a proof of claim in the bankruptcy court which was engaged in the reorganization of the employer whose actions prompted the alleged withdrawal liability, the time for filing arbitration under section 1401(a)(1) was equitably tolled, and the tolling of the time period under section 1401(a)(1) for seeking arbitration is extended until the final disposition of this case.

The denial of defendants' motion to dismiss is AFFIRMED. The summary judgment in favor of the Fund is REVERSED and the judgments entered are VACATED. This case is remanded to the district court for further proceedings.

---

5. Defendants do not argue that the bankruptcy court's dismissal of the Fund's claim against Mason and Dixon (because of its untimely filing of the claim under the bankruptcy procedure) prevents the subsequent filing of a claim for withdrawal against defendants in district court.