**William Harris SHARPE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Donald Davis SAVAGE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 79–5314, 79–5315.

United States Court of Appeals,
Fourth Circuit.

Submitted July 27, 1982.

Decided June 30, 1983.

Mark J. Kadish, Atlanta, Ga. (Rhonda A. Brofman, E. Marcus Davis, Kadish, David & Brofman, P.C., Atlanta, Ga., Larry Turner, Dennis E. O'Neill, Burkett, Wooddy, Bargmann & Cisa, Charleston, S.C., Edward T.M. Garland, Garland, Nuckolls & Catts, P.A., Atlanta, Ga., on brief), for appellants.

Lionel S. Lofton, Asst. U.S. Atty., Charleston, S.C. (Thomas E. Lydon, Jr., U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WINTER, RUSSELL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

The Supreme Court has vacated our decision in *Sharpe v. United States,* 660 F.2d 967 (4th Cir.1981), and has remanded[1] this case to us, 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1345 (1982), with the direction that we reconsider it in light of *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). We have now done so. We conclude that by virtue of *Ross,* the decision of the Supreme Court in *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), upon which we relied as an alternative basis for our decision in *Sharpe,* is no longer valid. Accordingly, we disavow the rationale set forth in Section IV of the majority opinion. We also modify Section V of that opinion by deleting therefrom the words "either . . . or because the warrantless search of the bales was unlawful."

Finding that *Ross* does not adversely affect our primary holding that the initial stop of the vehicle and the lengthy detention of the two defendants constituted illegal seizures, we readopt the majority opinion as modified herein, reaffirm our previous decision, and reverse the convictions.

---

1. The Supreme Court's order reads, in part . . . "this cause is remanded . . . for further consideration in light of *United States v. Ross,* 456 U.S. [798, 102 S.Ct. 2157, 72 L.Ed.2d 572] (1982)." We have complied with this mandate. We do not believe it is appropriate, despite the urging of our dissenting brothers, to go beyond this explicit instruction and to reexamine our principal holding or to reargue the same issues that were addressed in detail in the original majority and dissenting opinions. Our conviction that we should so limit our reconsideration is buttressed by the comments of the dissenting justices who are clearly focusing only on the application of *Ross* to our principal holding. Had the Supreme Court felt that a reversal was in order, it could and would have said so. If we have misconceived the Court's wishes, the future will take care of that omission on our part.

I am authorized to state that Chief Judge HARRISON L. WINTER, a member of the original panel, and Circuit Judges JAMES DICKSON PHILLIPS, MURNAGHAN, and SPROUSE join in the views expressed in this opinion.

DONALD RUSSELL, Circuit Judge, dissenting:

When an opinion-order by the majority on remand of this appeal by the Supreme Court, which opinion-order was for all practical purposes in the same language as the present opinion distributed as of May 30, 1983, was first submitted by the majority of the panel on November 16, 1982, I promptly submitted my dissent on November 19, 1982. On the same date there was filed a motion by an active member of the Court to hear *en banc* this opinion-order. When the motion did not command the required Court majority, I again on December 14, 1982, submitted a dissent.

The majority has now submitted the present opinion and order. I reiterate my dissent both to the original opinion-order and to the denial of *en banc* hearing.

I submit my dissent to the denial of *en banc* hearing as my dissent to the present opinion-order herein. This dissent is as follows:

DONALD RUSSELL, Circuit Judge, dissenting:

I hesitate to file another dissent in this case, this time on the denial of a motion, made by a member of this Court, for an *en banc* hearing on an order on remand from the Supreme Court. I feel so strongly that our action on remand is contrary to the mandate of the Supreme Court that I am compelled again to state my views.

Implicit in the decision filed by the majority on remand in this case is the assumption that the Supreme Court overlooked inadvertently that the majority's original decision which was vacated by the Supreme Court rested "primarily" on a sound ground that was not involved in *United States v. Ross*[1] and that, therefore, it was not necessary to disturb the result or to vacate the reversal of the convictions below as decided by the panel majority in their initial opinion. What the majority of this Court plainly stated is that the Supreme Court in reviewing this case failed to consider the ground on which the majority of our panel decided this case. I find, with due deference for the contrary opinion of my brothers, this to be a misreading of the Supreme Court decision.

I suggest with the utmost confidence that the majority of the Supreme Court did not overlook the first ground given by the majority of this Court for its initial decision, as the majority inaccurately would believe. Three members of the Supreme Court, in dissent, noted in particular this very ground and, to some extent at least, indicated they thought the Supreme Court should address it as entitled to some consideration in this context. The majority of the Supreme Court obviously did not agree and proceeded, by their action, to demonstrate (conclusively I suggest) that they did not feel that the first ground listed in our prevailing panel opinion provided any arguable basis for reversing the convictions below. Had they thought otherwise, they would simply have affirmed the reversal of the convictions as ordered in our initial opinion herein. I say that because it is a well-settled and oft-repeated rule of appellate procedure that, if the result of the decision which is challenged on appeal is correct for any reason, whether stated by the lower court or not, the decision of the lower court is affirmed. *Riley Co. v. Commissioner,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937). I am sure the Supreme Court is as well aware of its own Rules as we are. Under this rule, if the first ground in our initial opinion had been, in the opinion of the majority of the Supreme Court correct and supported a reversal of the convictions below, as the majority found in our panel opinion, the Supreme Court would have affirmed that opinion; better still, it would probably not

---

1. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

have granted certiorari at all in this case. It did not do this, however. On the contrary, it vacated our decision and instructed us to decide the case on the basis of *United States v. Ross*.

The order on remand by us would assume, though, that the Supreme Court did not decide that *United States v. Ross* was controlling on the decision in this case and did not instruct us to decide this appeal on remand on the basis of *United States v. Ross;* it, in the opinion of a majority of the panel, only instructed us to "consider" *United States v. Ross* but left to us to determine, after considering *Ross,* whether it had any relevancy to the result reached by us in this case. Once again, I think the majority has mistaken gentleness in instruction for indefiniteness in command. The Supreme Court was seeking to be gentle with us but there is, I submit, no mistaking what they expected us to do. The Supreme Court thought *Ross* both relevant and dispositive and I would accept the plain direction of the Supreme Court.

I think it is plain why the majority of the Supreme Court didn't waste time on the first point made in our initial opinion herein. This is obvious when we look at the only detention and the only search really relevant in this action. Let's focus on the only search that was important in this case.[2] That was the search of the van. It was the contraband in the van that convicted the defendants. The Pontiac car was only the lead car or guide for the van and its cargo of contraband. The Pontiac apparently transported no marijuana. The convicting evidence was in the van; the search and seizure of the van provided the critical evidence in the case; it was the suppression of the fruits of that search that was vital in this case and that made inescapable the proof of the guilt of the defendants. I say this because only if that search could be invalidated could the defendants keep out of the trial the contraband, the evidence which convicted the defendants. Since the

first ground stated in our original opinion focused on the length of the detention or intrusion, the only issue was whether the detention of the van, but only the van, was illegally extended. What was the length of delay in that case?

Our original opinion states the length of that delay. It states that: "When Cooke [the DEA agent] arrived approximately fifteen minutes after the truck had been stopped . . . ." 660 F.2d at 969. Later it said: ". . . Savage [the operator of the van] was held under custodial arrest without probable cause by Thrasher [the highway patrolman who stopped the van at the instance of Cooke] for at least fifteen minutes before being questioned and finally arrested by Cooke." 660 F.2d at 970. And why was there a delay of fifteen minutes? The delay was occasioned by Savage's attempt to elude the DEA officer after he and the driver of the lead car had been stopped. Savage had tried to drive off when Cooke went over to the lead car, in the process "almost hitting [the car of the highway patrolman who had assisted Cooke in stopping the caravan]," 660 F.2d at 974 (Russell, dissenting). Is delay secured by such a ploy by a drug trafficker to be rewarded by declaring a delay of but fifteen minutes, and a delay so achieved, unconstitutionally long? I think not.

Approximately a year before our decision the Supreme Court in a case that the majority did not discuss, though it was discussed and relied on in my dissent, had dealt authoritatively with delay in connection with an investigatory *Terry*-type stop. *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In that case the Supreme Court of Michigan had invalidated an investigatory stop of 50 minutes as too long. The United States Supreme Court reversed and, in so doing, declared:

"The cases recognize that some seizures admittedly covered by the Fourth Amendment constitute such limited intru-

---

**2.** In this discussion, I do not review anew the facts of this case. Those facts are adequately detailed in the majority and dissenting opinions in the original decision. *Sharpe v. United States,* 660 F.2d 967 (4th Cir.1981).

sions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity. In these cases, as in *Dunaway* [*v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824], the Court was applying the ultimate standard of reasonableness embodied in the Fourth Amendment. They are consistent with the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause. But they demonstrate that the exception for limited intrusions that may be justified by special law enforcement interests is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons involved in *Terry* and *Adams* [*v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612]. Therefore, in order to decide whether this case is controlled by the general rule, it is necessary to examine both the character of the official intrusion and its justification." [pp. 699–701, 101 S.Ct. pp. 2592–93]

It added in an explanatory footnote, the following:

"If the purpose underlying a *Terry* stop—investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry* and *Adams.*"

After adding this language, the Court cited and quoted a statement from 3 W. LaFave, *Search and Seizure,* providing various circumstances under which detention may be properly extended.

The majority of this Court has taken some descriptive phrases out of *United States v. Brignoni-Ponce,* 422 U.S. 873 at 880, 95 S.Ct. 2574 at 2579, 45 L.Ed.2d 607, treated them improperly as prescriptive terms, and thereby converted them into a rule that an investigatory stop could "consume no more than one minute" and could involve "only a brief question or two." 660 F.2d at 970. That the language in *Brignoni-Ponce* was purely descriptive of the circumstances of that case and was not to be treated as a statement of an absolute rule that the detention in an investigatory stop may not be "longer than the brief time period allowed in *Terry* and *Adams,*" was unquestionably demonstrated by the language of the Supreme Court in its latest decision on investigatory stops, rendered only a few months ago in *Summers.* What I have never understood is the panel majority's complete reluctance to even note, much less discuss or to consider the Supreme Court's latest decision on investigatory stops in this connection. In that case the Supreme Court very plainly stated that the officers, in effecting an investigatory stop, "must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry* and *Adams.*" If there ever were "circumstances" which would warrant "longer" detention than "the brief time period involved in *Terry* and *Adams,* they were present here. The driver of the van himself caused the short delay (*i.e.,* 15 minutes) by seeking to elude the officers and to escape. *Had he not done this, there would have been no delay at all.* What the panel majority, by its ruling, did was to reward his wrongful conduct in seeking to escape by granting him what it describes as constitutional protection. I do not believe we have to go that far in order to uphold the Constitution as a shield for the guilty.

Moreover, on the same day as the Supreme Court remanded this case, it granted certiorari in *United States v. Place,* 660 F.2d 44 (2d Cir.1981). *See,* 457 U.S. 1104, 1106, 102 S.Ct. 2901, 2905, 73 L.Ed.2d 1312, 1314. The point in issue was the alleged invalidity of a search and seizure because of the extended time taken in an investigative stop. The search involved was of baggage rather than of a person but the Court said: ". . . the Fourth Amendment does not draw any distinction between an unlawful seizure of a person and the similar seizure of his property. In both cases there is an in-

fringement of the person's freedom of action." *Id.* at 51. The Court noted that under the *ALI Model Code of Pre-Arraignment Procedure* § 110.2(1) (1975), "a detention not based on probable cause and not consented to [had been] limited to a maximum of twenty minutes' duration." *Id.* at 51. In this case, the officers had seized the defendant's baggage at the airport, "remov[ed] it to another location several miles away for a period of at least 1½ to 2 hours for the admitted purpose of determining whether it contained narcotics." *Id.* at 51. It held that, "[i]n our view this protracted dispossession [of approximately two hours] cannot reasonably be characterized as a *Terry*-type 'investigative stop.'" *Id.* at 52.[3] The Supreme Court has granted certiorari to review that two-hour rule.

I have mentioned *Summers* and *Place* to show that the Supreme Court is alert to the point which the majority assumes was inadvertently passed over by the Supreme Court. It is inconceivable that it neglected to discuss the majority's first ground for reversal of the convictions because it did not perceive the point. The reason the Supreme Court did not advert to the length of the stop was manifestly because it considered the point without merit. To repeat: The only reason the Supreme Court did not feel required to discuss the length of the detention in this case was that the delay of the van was not unconstitutional under any view of the case and certainly not under the standard established so recently in *Summers*. The delay, as the majority found it, was fifteen minutes. This was less than a third the delay in *Summers*, it was one-fourth less than the time allowed under the ALI rule, as quoted in *Place*, and it was one-eighth the delay in *Place*. Moreover, the delay itself was caused by the effort of the driver of the van to elude an investigatory stop. Under such circumstances, the

Supreme Court very properly saw no reason to address in any detail the first point in the majority's opinion.

There is another feature to this case that should be observed. After the highway patrolman had stopped the van, the driver offered the patrolman a substantial bribe to allow him to escape. He wanted to avoid being connected with the van. That conduct was the strongest evidence that the van contained contraband and that the driver wanted to disassociate himself from the van. There is no clear evidence when this occurred during the 15 minutes of the detention, but, when it did occur, I submit, the officers had from that time forward probable cause to search the van.

With all deference to my brothers, I cannot agree to a decision which would void the convictions in this case on the ground that a detention of a van for 15 minutes, a delay caused by the driver of the van's attempt to escape, was an unconstitutional investigative stop. I, therefore, dissent from a denial of *en banc* hearing on the final order entered on remand from the United States Supreme Court.

I am authorized to state that Judges WIDENER, HALL and CHAPMAN join in this dissent, as they also did in my dissents to the original opinion-order and to the denial of *en banc* hearing.

---

**3.** In *United States v. Regan,* 687 F.2d 531, 537 (1st Cir.1982), the First Circuit, which found a detention of twenty-two hours too long, said, however, that it was not prepared to accept what it called the Second Circuit's two-hour rule, as stated in *Place,* 660 F.2d at 51, and held that every detention had to be determined on its own facts and circumstances, which was exactly what *Summers* said.