In the Matter of INTERCO
INCORPORATED, et
al., Debtors.

INTERCO INCORPORATED,
et al., Movants,

v.

ILGWU NATIONAL RETIREMENT
FUND, Respondent.

In the Matter of INTERCO
INCORPORATED, et
al., Debtors.

ILGWU NATIONAL RETIREMENT
FUND, Movant,

v.

INTERCO INCORPORATED,
et al., Respondents.

Bankruptcy Nos. 91–40442–172
through 91–40472–172.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 9, 1992.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Brian P. Leitch, Arnold & Porter, Denver, Colo., James I. Singer, Schuchat, Cooke & Werner, St. Louis, Mo., for ILGWU.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses the request of the Debtors–In–Possession for estimation of the consolidated claim of the ILGWU National Retirement Fund (the Fund) (MOTION Z–42) pursuant to 11 U.S.C. § 502(c), and the motion of the Fund to stay determination of the Debtors' request pending a ruling by the United States District Court (MOTION Z–55). The Fund has also objected to estimation of its claims in the Bankruptcy Court.

On January 24, 1991, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to a stipulated order, the Fund filed a single consolidated proof of claim that represented its claims against each of the separate Debtors. In its original proof of claim, the Fund alleged that Debtors owe $24,213,429 as "withdrawal liability pursuant to ERISA." The Fund designated the status of claim as disputed, contingent and unliquidated. The Fund subsequently filed an amended proof of claim in the amount $23,900,170.65.

On October 7, 1991, Debtors filed a "Motion to Estimate the Consolidated Claim of the ILGWU National Retirement Fund." Testimony and evidence was presented on November 21, 1991 and on December 12, 1991.

On November 8, 1991, the Fund, pursuant to 28 U.S.C. § 157(d), filed a motion to withdraw the District Court's reference to the Bankruptcy Court of those issues raised in Debtors' motion for estimation and all other issues involving the substance and procedure for determining the Fund's claim for withdrawal liability. The Fund also filed a "Motion of the ILGWU National Retirement Fund to Stay Determination of Debtors' Estimation Motion Pending Ruling on Motion to Withdraw the Reference," together with supporting memoranda.

The parties agreed that this Court would hear the Debtors' request that the Bankruptcy Court conduct the estimation proceeding, the Fund's objection thereto, and the Fund's motion to stay the Bankruptcy Court's determination of Debtors' estimation motion which had been set for November 21, 1991. At the conclusion of the second day of the hearing, the matter was submitted to the Court on the parties' Memoranda of Law.

I. The Parties' Arguments.

Debtors' motion to estimate is based on 11 U.S.C. § 502(c) which states, in pertinent part:

There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

.  .  .  .  .

Debtors assert that non-bankruptcy disputes concerning the amount of withdrawal liability are generally resolved through non-bankruptcy arbitration. However, Debtors contend that arbitration would unduly delay the administration of the case and that the Fund's claim should be estimated in the bankruptcy court.

In response, the Fund raises three arguments. First, the Fund contends the bankruptcy court cannot decide the Debtors' motion to estimate, in that the issues are subject to mandatory withdrawal under 28 U.S.C. § 157(d). Pursuant to Rule 5011(a) of the Federal Rules of Bankruptcy Procedure ("FRBP"), a motion for withdrawal of the reference of a case or proceeding is to be heard by a district judge. Therefore, the Fund has requested this Court to stay any further proceedings on this matter until after the district court enters its decision on the motion to withdraw. The Bankrupt-

cy Rules and the applicable Local District Court Rules indicate that the filing of a motion for withdrawal of a case or proceeding shall not stay the administration of the case or any proceeding therein before the bankruptcy judge, unless a specific stay is imposed by the district judge or by the bankruptcy judge. *See* Rule 5011(c), FRBP, and Rule 29(B)(2), Rules of the United States District Court for the Eastern District of Missouri.

Consistent with the discussion that follows, this Court must deny the Fund's request to stay the bankruptcy proceeding pending the decision of the district court on the motion for withdrawal of the reference for want of cause, and to prevent the delays that would result if a stay were to be granted at this time.

Second, the Fund asserts that if the Bankruptcy Court determines that it has jurisdiction to hear and decide the Debtors' motion for estimation, the motion must be denied as a matter of law. The fund argues that "any disputes between an employer and a multiemployer pension plan sponsor concerning the amount of a claim for withdrawal liability are subject to mandatory arbitration under the express terms of ERISA Section 4221." *Memorandum in Opposition to Debtors' Motion to Estimate the Consolidated Claim of the ILGWU National Retirement Fund,* November 8, 1991 at 3. Based on the Court's research and analysis set out below, the argument based on mandatory non-bankruptcy arbitration must be rejected.

Finally, the Fund argues that even if this Court could estimate the withdrawal claim, it should not be estimated under the facts of this case. This issue is discussed below.

## II. Can the Bankruptcy Court Estimate the Fund's Claim?

▇ The Fund contends that "arbitration of withdrawal liability disputes under ERISA is *mandatory* if the employer wishes to dispute the pension fund's calculation of liability." *Memorandum in Opposition to Debtors' Motion to Estimate the Consolidated Claim of the ILGWU National Retirement Fund,* November 8,

1991 at 5. ("Fund's Memorandum") (emphasis supplied). Further, the Fund argues, "there is no exception in ERISA to the 'arbitrate first' rule for employers who happen to be in Chapter 11." *Id.* at 6.

The Fund bases its argument on 29 U.S.C. § 1401(a)(1) which states:

Any dispute between an employer and the plan sponsor of a multiemployer pension plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

In interpreting this paragraph, circuit courts have held that Section 1401(a) of the Multiemployer Pension Plan Amendments Act ("MPPAA") "was not an 'absolute jurisdictional bar,' but instead constituted an 'exhaustion of administrative remedies' requirement." *I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.,* 825 F.2d 415, 417 (D.C.Cir.1987) (quoting *I.A.M. Nat. Pension Fund Benefit Plan C v. Stockton TRI Indus.,* 727 F.2d 1204, 1207 (D.C.Cir.1984)). In *Stockton,* the United States Court of Appeals, District of Columbia Circuit stated that "the requirement of exhaustion in this circuit is 'not inflexible'." *Stockton,* supra at 1209 (quoting *Ass'n of Nat'l Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1156 (D.C.Cir. 1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980)). The Court reaffirmed "that 'when the reasons supporting the doctrine are found inapplicable, the doctrine should not be blindly applied.'" *Id.* Thus, even in the non-bankruptcy context courts have sometimes declined to enforce the "arbitrate first" rule. *Id.*

Other bankruptcy courts have addressed the issue of whether determination of debtors' alleged liability for withdrawal from pension funds should be carried out through ERISA's statutory arbitration procedure or through the claims procedure in the bankruptcy court. These courts have concluded initially that bankruptcy courts are not precluded from determining withdrawal liability claims through the bankruptcy claims process. *See In re Amalgamated Foods, Inc.,* 41 B.R. 616 (Bankr.

C.D.Cal.1984); *In re T.D.M.A., Inc.*, 66 B.R. 992 (Bankr.E.D.Pa.1986).

The Fund contends that *In re T.D.M.A., supra,* is "no longer good law." Fund's Memorandum at 8. The Fund argues that *T.D.M.A.* relied on *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3rd Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), and that *Zimmerman* was overruled by *Hays & Co. v. Merrill Lynch,* 885 F.2d 1149 (3rd Cir. 1989). In *Zimmerman,* a debtor sued on a contract and the defendant requested a stay pending contractually agreed to arbitration. *Id.* 712 F.2d at 55. The Bankruptcy Court denied the stay and the Third Circuit Court of Appeals upheld that decision. The Third Circuit based its ruling on the policy of the Bankruptcy Reform Act of 1978: "to protect the positions of both the bankrupt and its creditors, bankruptcy actions should not be subject to unnecessary delay and all claims and issues relevant to such actions should be resolved in one expeditious proceeding." *Id.* at 56.

*Hays & Co., supra,* recognized that the United States Supreme Court had found the jurisdictional scheme of the 1978 Act unconstitutional "and the 1984 Amendments have substituted a new scheme." *Id.* 885 F.2d at 1159. The *Hays* Court explained that this "new scheme" provides for resolution of certain types of claims outside the bankruptcy process, and referred specifically to various state law claims and personal injury and wrongful death claims. *See* 28 U.S.C. § 1334(c)(2) and 28 U.S.C. § 157(b)(5). Thus, to the extent *Zimmerman* was grounded in the philosophy of the 1978 Act that called for resolving *all* claims in the bankruptcy process, its value as precedent for the issues presented here has been substantially reduced by the *Hays* decision.

However, the *Zimmerman* court recognized another policy of the 1978 Act which continues in the current Bankruptcy Code. That policy is that "bankruptcy actions should not be subject to unnecessary delay ..." *Id.* 712 F.2d at 56.

The *Hays & Co.* decision did not undermine that policy of the 1978 Act. Rather, it addressed the general question of the effect of arbitration agreements on *non-core* bankruptcy proceedings, and specifically determined that "the trustee is bound to arbitrate all of its claims that are derived from the rights of the debtor under section 541." *Id.* 885 F.2d at 1154. The Court then determined "that Congress does not see arbitration in a *non-core* adversary bankruptcy proceeding filed by the trustee in the district court as an anathema to its post–1984 bankruptcy policy ..." *Id.* at 1159 (emphasis added).

However, the Third Circuit took particular care to exclude from its determination requiring the trustee to submit to non-bankruptcy arbitration, those proceedings that are not derivative of the debtor. It based this exclusion on the concept that "[c]laims asserted by the trustee under section 544(b) are not derivative of the bankrupt." *Id.* at 1155. These claims are to be asserted by the trustee on behalf of the creditors for the benefit of the estate. *Id* at 1154–1156. This concept is the basis for a similar determination in the circumstances presented in this case.

■ The portion of the *Hays* decision that was subject to arbitration involved an adversary proceeding brought by the Trustee in a district court against a non-debtor entity based on a non-core proceeding. In the matter being considered here, the Debtors have commenced an action in the Bankruptcy Court against a creditor, based upon statutory authorization under Section 502(c). The authority to estimate claims is not derivative of the Debtors. It is a right that is to be exercised to facilitate the administration of the bankruptcy case for the benefit of the estate. For the purpose of confirmation of a plan under Chapter 11, Congress has clearly and specifically directed that estimation of claims against the estate is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B). Therefore this Court concludes that the *Hays* opinion supports the Debtors' position in this case, and does not mandate non-bankruptcy arbitration.

In *In re Amalgamated Foods,* 41 B.R. 616 (Bankr.C.D.Cal.1984), the bankruptcy

court addressed the issue of whether a debtor could bypass the ERISA statutory arbitration procedures in favor of the ordinary claims procedure in bankruptcy. The bankruptcy court focussed on the goals of the bankruptcy process as compared to the goals of ERISA arbitration. That court found the bankruptcy claims process to be a "procedure designed to facilitate the expeditious disposition of the assets of the estate." *Id.* at 618. The court found that the ERISA arbitration process is "dedicated to the same goal" of speedy resolution, but that the debtor need not submit to arbitration. *Id.* at 620.

Other bankruptcy courts have similarly permitted debtors to utilize bankruptcy procedures rather than submit to arbitration. *See, e.g., In re Glen Eagle Square, Inc.*, 1991 WL 71782 (Bankr.E.D.Pa.); *In re J.T. Moran Financial Corp.*, 118 B.R. 233, 235–236 (Bankr.S.D.N.Y., 1990); *In re Chas. P. Young Co.*, 111 B.R. 410 (Bankr. S.D.N.Y.1990). Neither the provisions of ERISA, nor the established case law mandates that the bankruptcy court defer to arbitration the estimation of Debtors' partial withdrawal liability for the purpose of allowance under Section 502. Therefore, the focus shifts to whether this court *should* estimate the claim of the ILGWU.

### III. Should the Bankruptcy Court Estimate the Fund's Claim?

█ Section 502(c) of the Bankruptcy Code was included in the 1978 Bankruptcy Reform Act in order to further the requirement that all claims against a debtor be converted into dollar amounts. *H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977) S.Rep. 95–989, 95th Cong., 2d Sess. 65 (1978), reprinted in 1978 U.S.Code Cong. and Admin.News 5787, 5851, 6310.* Congress has not substantially altered this subsection since then, although it had the opportunity to do so both in 1984 and 1988. Therefore, the Court concludes that Congress intended that the bankruptcy courts continue to use this section to facilitate the speedy and expeditious resolution of claims in bankruptcy courts.

The Fund submitted a "Supplemental Memorandum" in which it asserts that this Court has no authority to estimate its claim because "the Fund's Amended Proof of Claim is neither contingent nor unliquidated ..." Supplemental Memorandum in Opposition, December 11, 1991 at 2.

The term "unliquidated" is not defined in the Bankruptcy Code. However, courts have consistently defined an unliquidated claim as one that is not subject to "ready determination and precision in computation of the amount due" or "capable of ascertainment by reference to an agreement or by simple computation." *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987); *In re Wenberg*, 94 B.R. 631, 634 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990).

The Fund argues that its claim is capable of ascertainment "using formulae set forth in the Employee Retirement Security Act of 1974 ('ERISA'), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA")." Supplemental Memorandum in Opposition, *supra* at 2. However, Debtors have asserted that they will challenge the actuarial assumptions upon which the Fund's computation is based. Based on the evidence and testimony presented, this Court finds that the liquidation of the amount of the Fund's claim under MPPAA would require the resolution of many substantial disputed issues. Thus the claim is unliquidated because it is not readily determinable or ascertainable by reference to a simple computation.

█ The key issue to be addressed in this determination is whether deferral of this matter to arbitration would unduly delay administration of these bankruptcy cases. Undue delay is not defined by the Code; rather, it is a problem "whose solution ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question." 3 *Collier on Bankruptcy* ¶ 502.03, p. 502–73 (15th ed. 1991).

At the hearing on November 21, 1991, Debtors presented evidence in the form of

testimony by William Hanrahan. Mr. Hanrahan was qualified as an expert witness in MPPAA arbitrations. Mr. Hanrahan testified that the average time expended on arbitrations in cases comparable to the Debtors' cases is 1.8 years. Then, after the arbitration is completed, either party may appeal. Such appeals may require an additional one to two years.

The Fund has argued that Debtors' expert was not familiar with the facts in this case and could not testify that this case would take as long to arbitrate. However, the Fund presented no evidence, testimonial or otherwise, to contradict Mr. Hanrahan's figures or to show that the arbitration in these cases would require less than the 1.8 years referred to in his testimony.

Debtors have stated that they intend to file their plan of reorganization and disclosure statement early in 1992. Debtors argue that leaving the Fund's claim unliquidated would substantially impair the administration of these bankruptcy cases. This court has determined that in fact, a lengthy arbitration proceeding will adversely affect Debtors' ability to formulate and implement a plan of reorganization and "would run the risk of frustrating the entire reorganization case." *See In re Chas. P. Young Co.*, 111 B.R. 410, 418 (Bankr. S.D.N.Y.1990).

Debtors have shown a substantial momentum toward reorganization. The amount claimed by the Fund is in excess of $23 Million. To defer the determination of this claim to arbitration, would leave a void in the Debtors' plan formulation equation. Further, if a plan could be developed without a valuation of the Fund's claim, a lengthy arbitration proceeding could adversely affect the timing and certainty of any distributions to other creditors, and might cause such holders to vote against the plan or oppose confirmation.

Furthermore, it would be difficult for this Court to determine the feasibility of a plan until the allowed amount of the Fund's claim is determined. *See Matter of Pizza of Hawaii, Inc.*, 40 B.R. 1014, 1016–1017, (D.Hawaii 1984), *aff'd*, 761 F.2d 1374 (9th Cir.1985).

Finally, this Court notes that permitting estimation of the Fund's claim would prevent "piecemeal litigation" which "would seriously threaten or jeopardize a debtor's ability to reorganize." *In re Johns–Manville Corp.*, 57 B.R. 680, 687 (Bankr. S.D.N.Y.1986). This Court has previously denied numerous motions to lift the automatic stay in these cases where movants had requested permission to continue various non-bankruptcy lawsuits and proceedings. In many of those matters, the possibility of piecemeal litigation was the determining factor in denying the movants' requests. This factor is a valid consideration in this proceeding.

IV. Allowance.

On April 18, 1991, this Court entered Standing Order # 3 captioned, "Setting Claims Bar Date, Establishing Claims Processing And Objection Procedures, And Establishing Claims Estimation Procedures Pursuant to 11 U.S.C. § 502." In part, the Order described the procedures for estimation of claims. It also provided that "For the purpose of allowance in these cases under Section 502(c), the estimation proceedings will finally adjudicate, determine and allow the Debtors' liability for and the amount of any Claim or right to payment subject to an estimation proceeding." *Standing Order # 3* at 13.

The claims resolution process of Section 502(c) was not intended to be an abstraction. Like a key piece of a carefully crafted puzzle, it has no value by itself unless the framework of a bankruptcy case has been created. Its potential is not fully appreciated until the puzzle is completed by confirmation of a plan or discharge of the debtor's liability. If the framework is destroyed such as when the bankruptcy case is dismissed without confirmation of a plan, the claims resolution process and the resulting judicial declarations and adjustments to the debtor/creditor relationships are stripped of their purpose.

A bankruptcy court is to estimate any contingent or unliquidated claims for the purpose of *allowance* in a bankruptcy

case. 11 U.S.C. § 502(c). If there is no bankruptcy case, there is no purpose for the estimation procedure. An allowed claim in a bankruptcy case is a claim that may share in the assets of the bankruptcy estate. *See* 3 *Collier on Bankruptcy* ¶ 502.02, p. 502–18 to 502–23 (15th ed. 1991). Without something more such as a confirmed plan or agreement by the parties, the claims estimation process does not result in a liquidated, non-bankruptcy claim; rather, it produces a claim that has been estimated for the purpose of allowance in a bankruptcy case.

IT IS ORDERED that the Motion of the International Ladies Garment Workers Union National Retirement Fund to stay the determination of the Debtors' estimation motion pending a ruling by the District Court on the Fund's motion to withdraw the reference (MOTION Z–55) is DENIED; and

That the Debtors' motion to estimate the consolidated claim of the Fund (MOTION Z–42) is GRANTED; and that the Parties are to forthwith commence the Pre–Trial Procedures set out in Standing Order # 3 with respect to estimation procedures.